ALBERTSON v. FEDERAL COMMUNI-
CATIONS COMMISSION (DUNKIRK
BROADCASTING CORPORATION, In-
tervenor).

No. 10305.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 3, 1950.

Decided May 22, 1950.

Mr. Vernon L. Wilkinson, Washington, D. C., with whom Messrs. Andrew G. Haley and James A. McKenna, Jr., Washington, D. C., were on the brief, for appellant.

Mr. Max Goldman, Assistant General Counsel, Federal Communications Commission, Washington, D. C., with whom Messrs. Benedict P. Cottone, General Counsel, Richard A. Solomon and Thomas H. Wall, Counsel, all of the Federal Communications Commission, all of Washington, D. C., were on the brief, for appellee. Mr. Dee W. Pincock, Washington, D. C., also entered an appearance for appellee.

Mr. Charles F. Duvall, Washington, D. C., with whom Messrs. Ben S. Fisher, Charles V. Wayland and John P. Southmayd, all of Washington, D. C., were on the brief, for intervenor Dunkirk Broadcasting Corporation.

Before PROCTOR, WASHINGTON and BAZELON, Circuit Judges.

PROCTOR, Circuit Judge.

We must first determine whether this appeal was taken in time. 47 U.S.C.A. § 402(c). If not, it must be dismissed. If so, we are met with a further question as to the legality of the action of the Federal Communications Commission in dismissing appellant's application for rehearing under Section 405 of the Federal Communications Act, 47 U.S.C.A. § 405. These questions arise out of the following state of facts.

Albertson, appellant, has been the licensee since 1936 of radio broadcast station WBNY at Buffalo, New York, operating on a frequency of 1400 kilocycles, 250 watts power, unlimited time. Dunkirk Broadcasting Corporation, intervenor, (hereafter called "Dunkirk"), applied July 30, 1947, for a new broadcast station in the city of Dunkirk, New York, on a frequency of 1410 kilocycles, 500 watts power, unlimited time, directionalized at night. This application, supported by an engineering report and map, represented that "No co-channel or adjacent channel interference will be caused to * * * any existing or proposed broadcast station * *." Upon the basis of the application, with that information, the Commission granted a construction permit December 16, 1948, without a hearing, as in the public interest, pursuant to 47 U.S.C.A. § 309(a) and Commission Rule 1.382.

On January 5, 1949, Albertson applied for "rehearing" of the order. This application was filed as of right under Section 405 of the Act, upon the asserted ground that operation of Dunkirk would "produce interference to the service of WBNY within its established service area." An accompanying affidavit of Albertson's consulting engineer stated that the Dunkirk operation "will cause objectionable interference within the WBNY day time normally protected contour on .5 mv/m." The Commission was requested to set aside the Dunkirk grant; designate its application for hearing, and make Albertson a party.

Dunkirk opposed the Albertson application upon two grounds. First, that the supporting engineering affidavit failed to comply with the requirements of Rule 1.390 (c) in that no reference was made to the Commission's Standards of Good Engineering Practice or to actual measurements made in accordance with the Standards, and no basis was given by the engineer for his conclusion. Second, that on December 13, 1948, the Commission had granted a construction permit to Erie Broadcasting Company (hereafter called "Erie"), for a radio station on 1400 kilocycles, 250 watts power, unlimited time,

as in the public interest; that the Commission's records showed this station would cause interference to WBNY; that WBNY had not objected, was not named a party to the proceedings and did not intervene or apply for rehearing. An affidavit and a map of Dunkirk's consulting radio engineer was attached. These purported to show, with all the technical data contemplated by Rule 1.390, "that the area of adjacent channel interference from the proposed Dunkirk operation to WBNY falls entirely within the interference area from the Erie operation to WBNY." So Dunkirk contended that WBNY could not claim to serve the area lost by the Dunkirk operation as it would be lost to WBNY through the Erie grant; that it could not be claimed the Dunkirk grant injured or modified the WBNY license, for its interests were not adversely affected thereby; hence that WBNY was "not entitled to consideration" under Rule 1.390 as a person aggrieved or whose interest would be adversely affected; therefore that the application for rehearing should be denied. These contentions are renewed in this court.

The Commission sustained the objection that Albertson's engineering affidavit was inadequate, and dismissed his application February 16, 1949. Within the twenty days allowed for noting an appeal, Albertson filed a "Motion to Set Aside Order of February 16, 1949, to Vacate Grant of December 15, 1948, and to Designate Application for Hearing." We shall refer to this pleading as a "motion to reconsider." It contains extensive argument, stressing the admission by Dunkirk and its engineer of interference with the Albertson Station and asserting that the motion was being filed "to correct a decision which it is believed is both unsound and unfair, and to foreclose any contention on appeal that petitioner has not exhausted his administrative remedies." Dunkirk's reply opposed the motion upon its merits. No question was raised as to its procedural status. The motion was considered by the Commission on its merits and denied. Within twenty days thereafter, Albertson

filed his notice of appeal in this Court. 47 U.S.C.A. § 402(c).

■ The Commission and Dunkirk now contend that the appeal should be dismissed as not having been taken in time. They concede that Albertson's application for "rehearing" under Section 405 tolled the statutory period of twenty days for an appeal. Southland Industries v. Federal Communications Commission, 1938, 69 App. D.C. 82, 99 F.2d 117; Saginaw Broadcasting Co. v. Federal Communications Commission, 1938, 68 App.D.C. 282, 96 F.2d 554. They argue, however, that the motion to reconsider the order dismissing the application for rehearing did not suspend running of the appeal period because it "was not a timely filed petition for rehearing under Section 405 or any other administrative remedy authorized by the Communications Act or the Commission rules." In short, they contend that the motion was without procedural standing. Obviously it was not, as they assume, a second application for rehearing contemplated by Section 405, and was not so intended. Nor do the Commission Rules contain any express provision for a motion to reconsider the Commission's action on an application for rehearing filed under Section 405. But, there is nothing in the statute or rules opposed to such a motion. So we think there can be no doubt, in the absence of statutory prohibition, that the authority of the Commission to hear and determine matters arising under the rehearing provision of Section 405 carries with it by implication the authority to reconsider a "decision, order or requirement" made within the twenty days allowed for an appeal. The power to reconsider is inherent in the power to decide. Therefore, in the absence of any specific limitation, such a motion may be filed within the period for taking an appeal. That is so, for within such period jurisdiction over the contested order remains with the Commission. Babler v. United States, 8 Cir., 1943, 137 F.2d 98, 99; United States ex rel. Harrington v. Schlotfeldt, 7 Cir., 1943, 136 F.2d 935, 937.

Contrary to its present position, the Commission has clearly recognized its inherent authority to reconsider previous action taken by it. Rule 1.726(c) provides that the Commission "may on its own motion set aside any action made or taken by it within 20 days." Needless to say, if it can set aside its action, the power to do so is not restrained by the words of the rule which refer only to action taken on *its own motion*. The authority is not derived from the rule but from the implied powers arising out of the Act. Therefore, if it may, as it undoubtedly can, reconsider previous action and set the same aside on its own motion, there is nothing to preclude it from doing so upon the motion of an interested party. Cf. Sprague v. Woll, 7 Cir., 1941; 122 F.2d 128, 130. For these reasons we are not impressed by the argument that the Commission lacked express statutory or administrative authority to reconsider its order dismissing Albertson's application for rehearing. Braniff Airways v. Civil Aeronautics Board, 1945, 79 U.S.App.D.C. 341, 147 F.2d 152.

The Commission relies upon this court's opinion in Safeway Stores, Inc. v. Coe, 1943, 78 U.S.App.D.C. 19, 136 F.2d 771, 774, 148 A.L.R. 782. We think the conclusion there is not applicable to the facts in the present case. That decision turned upon the positive prohibition of Rule 6(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., against enlargement of time for filing a motion for new trial or rehearing. Hence, we held that expiration of the ten days allowed for filing such a motion gave finality to the judgment and divested the court of jurisdiction over it, with the result that a motion made after that period could not suspend the time for taking an appeal. We stated, though, that "unquestionably, the general rule is that the time for taking an appeal is suspended by a seasonably filed motion for new trial or petition for rehearing," citing Morse v. United States, 1926, 270 U.S. 150, 154, 46 S.Ct. 241, 70 L.Ed. 518. We also indicated that Bowman v. Loperena, 1940, 311 U.S. 262, 61 S.Ct. 201, 85 L.Ed. 177, extended the rule to include a motion filed after time, if considered by the court on its merits, and in event the motion is denied "the judgment of the court as originally entered does not become final until such denial, and the time for an appeal runs from the date thereof."

The Commission expresses the fear that such a rule would encourage frivolous and repetitive motions for purpose of delay, against which the Commission would be helpless. Yet, the motion here was not repetitive, nor, in our opinion, was it frivolous. Neither did the Commission so regard it, for they considered and disposed of it upon the merits. Furthermore, the fears of the Commission do not seem well founded, for the authorities indicate that motions without merit which are not entertained will not toll the time for taking an appeal. See Bowman v. Loperena, supra; Wayne United Gas Co. v. Owens-Illinois Glass Co., 1937, 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557; Ortiz v. Public Service Commission, 1 Cir., 1940, 108 F.2d 815.

We conclude that the Commission did have authority to entertain the motion; that consideration thereof on the merits suspended running of the period for taking an appeal from the order dismissing Albertson's application for rehearing, and that the twenty day period for noting the appeal commenced from the effective date of the order denying the motion to reconsider. Therefore, we hold that the appeal was taken in time.

Coming to the merits of the appeal, they sift down to the single question: Did the Commission err in dismissing Albertson's application for rehearing? The Commission declared that there was no alternative. This, we think, was too narrow a view. Other courses were open. Assuming the affidavit accompanying the application was insufficient, an amendment could have been ordered or allowed. Ordinarily that would be appropriate. Federal Rule 15(a) illustrates the modern liberality in allowing amendments. While the Commission's procedure is not governed by the Federal Rules, "administrative procedure is, and should be, simpler,

less formal and less technical than judicial procedure. Certainly it should not be made more so in the absence of clear and specific mandate from Congress." See Sherwood Brothers, Inc. v. District of Columbia, 1940, 72 App.D.C. 155, 158, 113 F.2d 162, 165. Here the "opposition" filed by Dunkirk contained an admission of interference with WBNY to the same extent alleged by Albertson's application. In addition, there was the affidavit of Dunkirk's engineer giving substantially all the technical data contemplated by Rule 1.390, and mapping the area of interference with WBNY. So the Commission had before it complete information, with the verity which admission by an opposing party gave. Yet, apparently, all this was ignored and Albertson's application for rehearing dismissed upon the single ground that the affidavit of Albertson's engineer, standing alone, did not fulfill the technical requirements of Rule 1.390(c). This, we believe, was a denial of Albertson's right to a *"reasonable opportunity* to show cause" why his license should not be modified. Section 312(b) of the Act, 47 U.S.C.A. § 312(b); Federal Communications Commission v. National Broadcasting Co., Inc., 1943, [the K O A case], 319 U.S. 239, 63 S.Ct. 1035, 87 L.Ed. 1374.

■ The Commission says the purpose of the rule is to insure adequate information of the nature and extent of alleged interference to enable it to determine whether a hearing is required under Section 312(b) of the Act. We do not understand it to be suggested that the total material before the Commission was insufficient for that purpose. The Commission stands here upon the narrow ground that the affidavit of Albertson's engineer was inadequate. It ignores the admitted interference by Dunkirk. Dismissing the application upon this basis disregards the long established rule that a defective pleading may be aided by an opposing pleading and that a party will not be heard to insist that his adversary has omitted to allege facts he himself has supplied. Under this rule "a defect in a pleading, even as to matter of substance, may be aided or cured by the pleading of the adverse party, * * *." 41 Am.Jur., Pleading, § 402, and cases cited. United States v. Morris, 1825, 10 Wheat. 246, 285, 6 L.Ed. 314; Brooke v. Brooke, 1 Sid. 184, 82 Eng.Rep. 1046 (K.B.1664).

■ Under modern procedural methods pleadings are not to be struck down for non-prejudicial deficiencies. See Mansfield Journal Company v. Federal Communications Commission, 1950, 86 U.S. App.D.C. ——, 180 F.2d 28; A. E. Staley Mfg. Co. v. Federal Trade Commission, 7 Cir., 1943, 135 F.2d 453, 454; N. L. R. B. v. Piqua Munising Wood Products Co., 6 Cir., 1940, 109 F.2d 552, 557. In view of these familiar rules of practice and all the facts and circumstances before the Commission, we cannot escape the conclusion that the action of the Commission in dismissing Albertson's application for rehearing was an unwarranted denial of rights accorded by the law. This stands out in light of the fact that the Dunkirk license was obtained without a hearing and without notice to, or participation by Albertson, *all due to assurance that no interference would be caused.* Had that fact been known to the Commission the license could not have been granted without Albertson's having notice and opportunity to be heard. § 312(b) of the Act; Commission Rule 1.385(b) and (c). Cf. Federal Communication Commission v. National Broadcasting Co., Inc., (K O A), 1943, 319 U.S. 239, 245, 246, 63 S.Ct. 1035, 87 L.Ed. 1374.

We hold that a rehearing should be allowed under Section 405 and Albertson accorded a full and fair opportunity to show cause why operation of WBNY should not be interfered with, and thus modified (K O A case), by the Dunkirk grant. Therefore, the case is remanded with directions to the Commission to proceed in accordance with these views.

We cannot now consider the contention of Dunkirk concerning the effect of the Erie permit. The question does not fall within the scope of this appeal. We express no opinion concerning it.

Reversed.